*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 11, 2019

**BY ECF**

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Jamel Jones et al.*, S6 18 Cr. 834 (PAE)

Dear Judge Engelmayer:

    The Government writes pursuant to the Court's February 5, 2019 Order directing the Government to set forth its views as to (1) the potential conflict of interest posed by Mr. Lazzaro's prior representations of Mr. Jordan and Mr. Walter, and his current representation of Mr. Hernandez; and (2) whether the potential conflict may have tainted the superseding indictment returned on January 28, 2019.

    As detailed below, the Government's position – based on the information set forth in the parties' letters – is that:

    (1) As far as concerns Mr. Hernandez's Sixth Amendment right to effective, conflict-free counsel, Mr. Hernandez can waive any potential conflict that may arise as a result of Mr. Lazzaro's prior representations of Mr. Jordan and Mr. Walter. This waiver would be handled as a standard *Curcio* matter. No other defendant has any interest in Mr. Hernandez's right to effective assistance of counsel, and accordingly, no other defendant would be involved in Mr. Hernandez's *Curcio* proceeding.

    (2) To the extent that Messrs. Jordan and Walter have any factual cause to complain about Mr. Lazzaro representing Mr. Hernandez as a cooperating witness anticipated to testify for the Government, that would be addressed as a potential motion to disqualify Mr. Lazzaro from representing Mr. Hernandez. At this point it does not appear likely that any factual basis sufficient to justify disqualification can be alleged or established.

    (3) Messrs. Jordan and Walter have not identified any privileged information whatsoever that Mr. Lazzaro supposedly transmitted to Mr. Hernandez which, it is conjectured, Mr. Hernandez may have passed on to the Government and which, it is further conjectured, the Government may have used to seek charges in this case. Mr. Lazzaro has denied revealing any confidential information. Counsel's factually unfounded allegations, particularly given Mr. Lazzaro's specific

denial, are insufficient to require any sort of hearing. The information, redacted below, that the Government has provided the Court confirms that conclusion.

## I. Factual Background

As the Court is aware, the Superseding Indictment alleges that the defendants are members and associates of the Nine Trey Gangsta Bloods ("Nine Trey"), a set of the United Bloods Nation ("UBN"). The Superseding Indictment alleges various violent crimes in aid of racketeering, including, as pertinent hereto, the following:

### A. April 21, 2018 Shootings

On April 21, 2018, Kifano Jordan and Daniel Hernandez were together in Brooklyn. As they left a restaurant, two individuals, sitting in a car, made derogatory comments to Hernandez, and Jordan then assaulted one of the individuals. Hernandez and Jordan then got into an SUV and drove away. The individuals followed the SUV. Surveillance video shows Jordan exiting the SUV, running toward the individuals' car, and firing two shots at the car. Hernandez also got out of the SUV and watched Jordan shoot at the individuals.

Later that evening, Hernandez and other defendants went to the Barclays Center in Brooklyn where Hernandez was expected to perform the entrance song for one of the boxers prior to the bout. But at the Barclays Center, Hernandez and other Nine Trey members got into a confrontation with a rival rapper and members of that rapper's UBN set during which Fuguan Lovick discharged a firearm at the rival rapper and his gang associates.

### B. October 26, 2018 Shooting

On October 26, 2018, Hernandez appeared in New York Supreme Court for a sentencing hearing in connection with a state criminal charge. Following the hearing, Hernandez, Jordan, and Faheem Walter went to a restaurant in Manhattan, where Hernandez was scheduled to meet with an executive from his record label. But at the restaurant Jordan, Walter, and another individual got into an altercation with the executive's security detail during which Walter allegedly hit one of the security guard members in the head with a chair, and Walter was then shot in the stomach by one of the security guards.

## II. Discussion

### A. A Lawyer's Duty of Confidentiality

The lawyer's duty of confidentiality is one of the foundational elements of the profession. One of its statements, and one of its principal safeguards, may be found in New York Rule of Professional Conduct 1.9, *Duties to Former Clients*. That rule particularly prohibits a lawyer from "us[ing] confidential information of the former client . . . to the disadvantage of the former client" or "reveal[ing] confidential information of the former client" except as otherwise permitted under the Rules. Criminal defense attorneys generate a mass of confidential information from their various clients. But experience has shown that the Court, the Government, and other participants in the criminal justice system generally have little occasion to question counsel's compliance with

the confidentiality rules. Instead, we all usually rely on the justifiable assumption that counsel has complied with the standards of the profession. Here, there has been no factual basis to question Mr. Lazzaro's compliance with that rule, the more so given Mr. Lazzaro's specific denial of any breach of confidentiality.

### B. Mr. Hernandez's Right to Effective, Conflict-Free Counsel

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel, which includes "the right to representation by conflict free counsel." *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002). As a general matter, district courts have two separate obligations where there is a possible conflict of interest. First, the district court has an "inquiry obligation" when it is apprised of the possibility of a conflict of interest, under which it must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994). Second, if the district court finds after some inquiry that the defendant's attorney suffers from an actual or potential conflict, the district court then has a "disqualification/waiver" obligation, under which it is required either to disqualify the attorney if the conflict is sufficiently severe, or, if the conflict may be waived, to conduct a *Curcio* hearing to advise the defendant of the ramifications of the conflict and obtain a waiver of any conflict from the defendant.

The Government currently has no reason to believe that Mr. Lazzaro's prior representations of Messrs. Jordan and Walter pose either a *per se* or an actual conflict regarding Mr. Lazzaro's current representation of Mr. Hernandez. *Cf. Armienti v. United States*, 313 F.3d 807, 810 (2d Cir. 2002) (describing types of conflicts). At issue here is at most a potential conflict. "An attorney has a potential conflict of interest if 'the interests of the defendant may place the attorney under inconsistent duties at some time in the future.'" *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003) (quoting *United States v. Klitti*, 156 F.3d 150, 153 n.3 (2d Cir. 1998)). Conflicts "such as an attorney's representation of two or more defendants or his prior representation of a trial witness, are generally waivable." *Perez*, 325 F.3d at 125. "In the multiple representation situation," for example, "the defendant 'can be advised by independent counsel of the dangers' of such matters as 'one defendant's cooperating with the government,' and make a knowing and intelligent decision that he wishes to continue to be represented by his attorney despite the attorney's representation of another accused." *Id.* (quoting *United States v. Fulton*, 5 F.3d 605, 613 (2d Cir. 1993)). If the defendant "can rationally opt to retain counsel of his choice despite a conflict, the court conduct[s] a *Curcio* hearing to determine whether the defendant knowingly and intelligently waives his right to conflict-free representation." *Id.*\*

---

\*Judge Kaplan has observed that

> The Second Circuit has considered a number of different factors in determining whether a conflict can be waived including, among other things, (1) whether disqualifying the defendant's chosen counsel would create "real prejudice" to the defendant based on the length of the representation and/or counsel's familiarity with the case, (2) whether there is a possibility that the attorney could be

With respect to the *Curcio* issue, the Government believes that Mr. Lazzaro's prior representation of Mr. Jordan and Mr. Walter *could* have given him access to confidential client information that *might* in some way be pertinent to his representation of Mr. Hernandez, but that Mr. Lazzaro could not use it to benefit Mr. Hernandez's cooperation in this case. The inability to share that information with Mr. Hernandez would necessarily restrict Mr. Lazzaro's representation of Mr. Hernandez. In light of that potential conflict, the Government respectfully requests that the Court conduct a hearing pursuant to the Second Circuit's ruling in *United States* v. *Curcio* to advise Mr. Hernandez of his right to conflict-free representation and to inquire as to whether he understands and waives the potential conflict here. After advising Mr. Hernandez of the risks inherent in Mr. Lazzaro's continued representation of him, the Government requests that the Court afford the defendant reasonable time to digest and contemplate those risks. *Curcio*, 680 F.2d at 890. He should be encouraged to take the opportunity to consult with another, independent defense counsel and be informed that such counsel will be provided by the Court for this purpose if necessary. *Id.*; *see also United States* v. *Iorizzo*, 786 F.2d 52, 59 (2d Cir. 1986). If Mr. Hernandez subsequently informs the Court that he wishes to proceed with Mr. Lazzaro as his counsel, the Government requests that the Court elicit narrative responses from him designed to ascertain whether he is fully aware of the risks involved in the representation provided by Mr. Lazzaro and determine whether Mr. Hernandez is making a knowing and intelligent waiver of his right to conflict-free representation. A proposed *Curcio* examination is attached hereto.

## C. Considerations Relevant to Disqualification

Mr. Jordan's and Mr. Walter's letters do not appear to be requests for *Curcio* inquiries, but rather suggest they might move to disqualify Mr. Lazzaro from representing Mr. Hernandez. The only information available to the Government concerning the prior representations is set forth in the parties' letters. Thus, the Government's view as to the merits of Mr. Jordan's and Mr. Walter's disqualification requests is based on the limited, unredacted portions of those letters.

In assessing a motion to disqualify a lawyer from representing a criminal defendant due to the lawyer's prior representation of an adverse party, courts not only weigh a defendant's Sixth

---

> called as a witness at the defendant's trial or implicated in the defendant's alleged crimes, (3) whether the continued representation would conflict with the attorney's own personal financial or liberty interests, as opposed to the interests of a current or former client, (4) whether, if the conflict concerns the interests of another client, the attorney's relationship with the other client is continuing or has been terminated, (5) whether any other current or former client affected by the conflict has initiated or joined in the motion to disqualify defendant's chosen counsel; and (6) the availability of measures that might limit the dangers posed by the conflict, such as restricting an attorney's cross-examination of a former client.

*United States* v. *Stein*, 410 F. Supp.2d 316, 328 (S.D.N.Y. 2006) (international citations omitted).

Amendment right to the counsel of his choosing, but also whether there is substantial overlap between the subject matter of the lawyer's prior representation and the issues in the present matter. Indeed, in *United States v. Armaza*, 280 F. Supp. 2d 174 (S.D.N.Y. 2003), Judge Koeltl engaged in this analysis in denying the Government's motion to disqualify defense counsel.

"The right of a defendant in a criminal case to counsel of his choice is one of constitutional dimension, but it is not absolute." *United States v. Fisher*, 563 F. Supp. 1369, 1370 (S.D.N.Y. 1983); *accord United States v. Arrington*, 867 F.2d 122, 128 (2d Cir. 1989). While the Sixth Amendment guarantees a defendant's right to counsel, its "essential aim" is to provide "an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988); *accord United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) ("The Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the advocate of his or her choosing.").

While there is a "presumption in favor of the accused's chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." *Jones*, 381 F.3d at 119. "An actual conflict of interest exists when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client. An attorney has a potential conflict of interest if the interests of the defendant could place the attorney under inconsistent duties in the future." *Jones*, 381 F.3d at 119 (quotations and internal citations omitted).

In the Second Circuit, the court has discretion to disqualify an attorney if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (quoted in *United States v. DiTommaso*, 409 F.3d 127, 133 (2d Cir. 2005)). "Where the second element is satisfied, there is an irrebuttable presumption that the third element is also satisfied." *Scantek Medical, Inc. v. Sabella*, 693 F. Supp. 2d 235, 239 (S.D.N.Y. 2008).

The Second Circuit has determined that as a practical matter, motions to disqualify should be granted only when "the relationship between issues in the prior and present cases is 'patently clear,'" or that the issues involved are "identical" or "essentially the same." *Id.* at 739–40. In other words, "if the facts giving rise to an issue which is material in both the former and the present litigations are as a practical matter the same, then there is a 'substantial relationship' between the representations for purposes of a disqualification." *United States Football League v. National Football League*, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985).

Based on the information available to the Government, it appears while there is some overlap in the subject matter of Mr. Lazzaro's prior representations of Mr. Jordan and Mr. Walter and his current representation of Mr. Hernandez, the overlap does not seem to rise to the level requiring disqualification.

First, Mr. Jordan (in the redacted portion of his February 1, 2019 letter ("Jordan Ltr.")) references "an additional representation" that raises concerns about the use "of confidential information" against Mr. Jordan. In response, Mr. Lazzaro references communications on or about April 21, 2018 – the date of the two shootings – between him and Mr. Jordan (or those speaking on behalf of Mr. Jordan) relating to a NYPD i-card. *See* February 4, 2019 Lazzaro Letter ("Lazzaro Ltr.") at 2. Mr. Lazzaro further states that he "never had a substantive conversation with Kifano Jordan regarding the facts of the case which was the basis of the aforementioned i-card." Lazzaro Ltr. at 2. Moreover, Mr. Lazzaro states that he did not obtain privileged information from Mr. Jordan in connection with the i-card, nor has he (or anyone from his firm) disclosed any information obtained from Mr. Jordan to anyone else. Lazzaro Ltr. at 3.

Second, Mr. Walter and Mr. Lazzaro disagree as to whether the two engaged in any privileged conversations regarding the October 26, 2018 shooting. *Compare* February 6, 2019 Walter Letter ("Walter Ltr.") at 2 *with* January 22, 2019 Lazzaro Letter ("Jan. 22 Lazzaro Ltr.") at 2. Moreover, while this particular shooting is relevant in that Mr. Jordan, Mr. Walter, and Mr. Hernandez were together, the Government does not at this time view the incident as one in furtherance of the racketeering conspiracy charged in the Superseding Indictment.

Accordingly, based on the information set forth in the parties' letters, the Government does not view Mr. Lazzaro's prior representations of Mr. Jordan and Mr. Walter – particularly due to Mr. Lazzaro's representations that no privileged information was either communicated to or shared by him – as substantially related to the instant case. Should the defendants submit further facts, they can be addressed accordingly.

### D. The Superseding Indictment Was Not Tainted by Privileged Information

Mr. Jordan's and Mr. Walter's request for a hearing to determine whether the Superseding Indictment was tainted by confidential information from Mr. Lazzaro should be denied.

"[A] taint hearing is not required merely because a defendant has *asserted* that a prosecution is tainted by the Government's use of immunized testimony (or privileged communications). Rather, the defendant must demonstrate a "factual relationship" between the protected information and the present prosecution. *United States v. Hoey*, No. 15 CR. 229 (PAE), 2016 WL 270871, at *4 (S.D.N.Y. Jan. 21, 2016) (quoting *United States v. Blau*, 159 F.3d 68, 72 (2d Cir. 1998)). Here, Mr. Jordan and Mr. Walter argue that a taint hearing is necessary based on nothing more than the suggestion that confidential information may have passed from Mr. Lazzaro to Mr. Hernandez. *See* Jordan Ltr. at 3; Walter Ltr. at 3. This is insufficient to trigger a hearing. *Compare United States v. Schwimmer*, 924 F.2d 443 (2d Cir. 1991) (specific allegations regarding documents provided by one defendant to the Government); *United States v. Weissman*, No. S2 94 Cr. 760, 1996 WL 751386 (S.D.N.Y. Dec. 26, 1996) (memoranda subject to joint-defense agreement provided to the Government). Moreover, Mr. Lazzaro has denied receiving any

information from Mr. Jordan and Mr. Walter relevant to this case and has denied sharing any privileged information from other clients with Mr. Hernandez.

Even though the defendants have not submitted enough to trigger a hearing, the Government accepts the Court's invitation to provide the following information, which will be redacted in the Government's public filing.



■ ███████████████████████████████████████

For the foregoing reasons, the defendants' request for a hearing to determine whether the Superseding Indictment was tainted with privileged and confidential information should be denied.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _s/_____
Michael D. Longyear
Jacob Warren
Assistant United States Attorneys
(212) 637-2223 / 2264

cc: All counsel of record (by ECF)

**Proposed *Curcio* Examination**
*United States v. Daniel Hernandez*

A. **Introductory Questions To Establish Competence**

   Age

   Education

   Current medications

   Alcohol, drugs, medications within past 24 hours

   Is anything interfering with your ability to understand what is happening here today?

B. **Potential Conflict of Interest Posed by Lance Lazzaro's Prior Representations of Kifano Jordan and Faheem Walter**

   1. Are you satisfied with the services of Mr. Lazzaro thus far in the case?

   2. Has Mr. Lazzaro informed you that he represented co-defendants Kifano Jordan and Faheen Walter?

   3. Do you understand that the fact that Mr. Lazzaro represented Mr. Jordan and Mr. Walter likely had conversations with them that are likely covered by attorney-client privilege and could lead Mr. Lazzaro to have loyalties divided between yourself and Mr. Jordan and Mr. Walter?

   4. Let me give you some examples of the ways in which Mr. Lazzaro's privileged conversations with Mr. Jordan or Mr. Walter could adversely affect his representation of you in this case.

      a. Are you aware that Mr. Lazzaro could possibly have information from Mr. Jordan or Mr. Walter that might be helpful in representing you in this case, but that he is prohibited from doing so because of his duties of confidentiality to his former clients?

   5. Tell me in your own words what your understanding is of the potential conflicts of interest arising in this situation.

   6. Do you understand that one danger to you is in the inability to foresee all of the possible conflicts that might arise because of Mr. Lazzaro's prior privileged conversations with Mr. Jordan or Mr. Walter and his current representation of you?

### C. The Right to Conflict-Free Representation

7. Do you understand that as a defendant in a criminal case, you are entitled to assistance of an attorney whose loyalty to you is undivided, who is not subject to any factor that might in any way intrude upon the attorney's loyalty to your interests? In other words, do you understand that you are entitled to an attorney who has only your interests in mind, and not the interests of any other client?

8. Have you received any inducements, promises or threats with regard to your choice of counsel in this case?

9. Have you consulted with any attorneys other than Mr. Lazzaro about the dangers to you of this potential conflict of interest?

10. Do you understand that you have a right to consult with an attorney free from any conflict of interest about this issue, and that the Court will give you an opportunity to do that if there is any aspect of the information that I have conveyed to you today that you wish to discuss with a conflict-free attorney?

11. The Court is prepared to adjourn the remainder of this proceeding so that you may consult with another attorney about the potential conflict of interest that I have described to you today. In addition, the Court can appoint an attorney for you to consult on this matter if you cannot afford one. Would you prefer to adjourn until you can give more thought to this matter?

### D. Continuation of *Curcio* Hearing

12. After considering all that I have said today about the ways in which Mr. Lazzaro's prior representation of Mr. Jordan and Mr. Walter may adversely affect your defense, do you believe that it is in your best interest to continue with him as your attorney? Is that your wish?

13. Do you understand that by choosing to continue with Mr. Lazzaro as your attorney, you are waiving your right to be represented solely by an attorney who has no conflict of interest?

14. Are you knowingly and voluntarily waiving your right to conflict-free representation?

15. Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of Mr. Lazzaro's prior representation of Mr. Jordan and Mr. Walter, you were denied effective assistance of counsel by Mr. Lazzaro?

16. Is there anything that I have said that you wish to have explained further?