J3SsHERc

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          18 CR 834 (PAE)

5    DANIEL HERNANDEZ,

6                   Defendant.

7    ------------------------------x

8                                          New York, N.Y.
                                           March 28, 2019
9                                          3:00 p.m.

10
     Before:
11
                         HON. PAUL A. ENGELMAYER,
12
                                           District Judge
13

14                            APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     BY:  JACOB E. WARREN
17        Assistant United States Attorney

18   DAWN M. FLORIO
     LANCE LAZZARO
19        Attorneys for Defendant

20

21

22

23

24

25
```

J3SsHERc

```
 1            (Case called)
 2            MR. WARREN:  Good afternoon, your Honor.
 3            Jacob Warren on behalf of the United States.
 4            THE COURT:  Good afternoon, Mr. Warren.
 5            MS. FLORIO:  Good afternoon, your Honor.
 6            Dawn Florio of the Dawn Florio Law Firm representing
 7    Mr. Daniel Hernandez.
 8            MR. LAZZARO:  Good afternoon, your Honor.
 9            Lance Lazzaro for Mr. Hernandez.
10            THE COURT:  Very good.  Good afternoon, Ms. Florio.
11            Good afternoon, Mr. Lazzaro.
12            Good afternoon to you, Mr. Hernandez.
13            You may all be seated.
14            Ms. Florio, I gather you may be more comfortable
15    standing?
16            MS. FLORIO:  Actually, sitting is better.
17            THE COURT:  That's fine as well.
18            Good afternoon as well to the members of the public
19    who are here.
20            All right.  We are here today so that the court can
21    conduct a Curcio hearing with respect to Defendant Daniel
22    Hernandez.  The specific issue is whether Mr. Hernandez is
23    prepared to make and whether he can make a knowing and informed
24    waiver of any potential conflict presented by his
25    representation by Mr. Lazzaro.
```

J3SsHERc

1         For the benefit of all here, I am going to briefly

2    describe what this issue is and how it came about.  I don't

3    intend to review here the full history of the issue.  Those

4    interested can consult the transcript of the docket, including

5    of the pretrial conference at which the issue first arose and

6    the various court orders and the filings that have ensued.

7         Briefly, though, Mr. Hernandez was initially

8    represented jointly by Mr. Lazzaro and by Ms. Florio.  At an

9    early conference, it came to light that Mr. Lazzaro previously

10   had represented not one, but two of Mr. Hernandez's

11   codefendants in this case, in both of those instances in

12   criminal cases in state court.

13        These defendants were a Kifano Jordan and Faheem

14   Walter.  This fact came to light not because the court had

15   been alerted by Mr. Lazzaro to the fact of those prior

16   representations, rather Mr. Lazzaro's prior representation of

17   Mr. Jordan came to light in the course of a Curcio that had

18   been convened with respect to a separate conflict issue

19   involving Mr. Jordan's counsel, an issue which those counsel

20   had affirmatively brought to my attention.  My followup

21   questions then brought to light the fact that Mr. Lazzaro had

22   had a previously undisclosed representation of another

23   codefendant, Mr. Walter.

24        At that point, the court understood Mr. Lazzaro to

25   stand down from participating in this case, from representing

J3SsHERc

1    Mr. Hernandez in this case, until the potential conflict issues

2    had been sorted out.  Ms. Florio since then has been sole

3    counsel for Mr. Hernandez.  That was including in connection

4    with Mr. Hernandez's guilty plea on January 23, 2019,

5    opportunity to a plea agreement that included a cooperation

6    provision.

7           On February 21, 2019, after the issuance of a

8    superseding indictment and an arrest pursuant to it, the

9    transcript of Mr. Hernandez's guilty plea was unsealed.  In

10   the ensuing two months, the court has taken several steps to

11   ensure that the interest of all three potentially effect and

12   defendants -- Mr. Hernandez, Mr. Jordan, and Mr. Walter -- are

13   protected.

14          Both Mr. Jordan and Mr. Walter initially moved to

15   dismiss the superseding indictment on the theory that it

16   might have been tainted in some way by information provided

17   by Mr. Hernandez that derived from Mr. Lazzaro's earlier

18   representations of Mr. Jordan and/or Mr. Walter.

19          The court considered that motion, including by means

20   of reviewing the government's submissions regarding the

21   circumstances leading it the superseding indictment.  The court

22   ultimately denied that motion as baseless.

23          The court later gave Mr. Jordan and Mr. Walter the

24   opportunity to move to disqualify Mr. Lazzaro from representing

25   Mr. Hernandez.  Neither of them did so.  The court also took

1    steps to enable it independently to determine whether

2    Mr. Lazzaro's representation of Mr. Hernandez in this case

3    jeopardized the interests of Mr. Lazzaro's former clients,

4    Mr. Jordan and Mr. Walter.  The court directed Mr. Lazzaro to

5    submit a lengthy declaration recounting in detail the nature

6    and circumstances of those prior representations and to attach

7    any records that he retained reflecting privileged

8    communications with either of those former clients.

9    Mr. Lazzaro promptly did so.

10           Upon review of those submissions, the court determined

11   that the subject matter of Mr. Lazzaro's prior representations

12   were not factually connected to the present case, which

13   involves racketeering and other charges relating to an entity

14   that, as alleged, is called the Nine Trey Gangsta Bloods.

15           The court also determined that Mr. Lazzaro, based on

16   his submissions, is not privy to any privileged communications

17   of either of his prior clients that could be relevant here.

18           So that brings us to today.  On March 22, I issued an

19   order stating we are now down to a single issue that must be

20   resolved before Mr. Lazzaro may resume his representation of

21   Mr. Hernandez.  The remaining issue solely concerns the

22   interests of Mr. Hernandez, as they may be affected and were to

23   be represented by a lawyer, Mr. Lazzaro, who previously

24   represented two people who are now codefendants of his in this

25   case.

1        I should add, by way of factual update, that earlier

2    this morning, Mr. Jordan pled guilty before this court to two

3    firearms charges.  The case against him will now proceed to

4    sentencing.  That does not eliminate the potential conflict, of

5    course, but it narrows, at least as to Mr. Jordan, the context

6    in which Mr. Hernandez might be in a position to give adverse

7    testimony that could theoretically be affected by the counsel

8    and advice of Mr. Lazzaro.

9        With that long preface, which hopefully is clarifying

10    for all concerned, I propose to proceed in this order, and I

11    don't expect the hearing to take long.

12        I will first want to understand from Ms. Florio, the

13    non-conflicted counsel for Mr. Hernandez, what discussions she

14    has had with Mr. Hernandez to assure that he is educated about

15    the conflict at issue.  I want to understand essentially the

16    amount of time that you've taken with him and the ways in which

17    you've gone about educating him as to what the issue is.  The

18    reason, of course, is that under Curcio, a court is to extend

19    to the defendant an opportunity to confer about a potential

20    conflict issue with a non-conflicted lawyer.

21        Ms. Florio, we have had the good fortune, you've

22    already been in the case and are well familiar with the

23    circumstances.  You were the obvious person to appoint to guide

24    Mr. Hernandez on that issue.  It's my hope that if the hearing

25    goes as counsel have indicated they expect it to, Mr. Hernandez

J3SsHERc

may indicate that he is satisfied with your independent counsel

on that issue, which in turn might obviate a need for a second

hearing to allow time for that sort of consultation.

         In any event, after I speak with Ms. Florio, I will

then have Mr. Smallman swear Mr. Hernandez, and I will then

question Mr. Hernandez substantially along the lines of the

proposed colloquy that the government has filed, but with some

additional questions.  And the goal of that questioning will be

to make sure, Mr. Hernandez, that you understand the potential

ways -- potential emphasized here -- the potential ways in

which your representation by Mr. Lazzaro could potentially be

adversely affected because of the fact of Mr. Lazzaro's

previous representation of the two codefendants of yours.

         With that, over to you, Ms. Florio.  Just can you tell

me what communications -- thank you, Mr. Hernandez -- that you

have had with Mr. Hernandez by way of walking him through the

conflict thinking?

         MS. FLORIO:  As soon as the conflict issue had arisen,

I met many times with Mr. Hernandez, just me and him by

ourselves, and I explained what the conflict -- what the

potential conflicts could be, what his options are.

         I specifically had indicated to him, for example, if

he wouldn't -- this is if he wouldn't have pled guilty and

everyone would have gone to trial -- that anything that

Mr. Lazzaro had learned during his representation of Mr. Jordan

J3SsHERc

```
 1   and Mr. Walter, that that could not be used to cross-examine

 2   Mr. Kifano, Mr. Kifano Jordan and Mr. Walter.

 3              So he understood that.  He accepted that.  He waived

 4   any potential, you know, conflict with respect to that

 5   particular issue.  We have exhausted all the other issues of

 6   the potential conflicts in this case.  He understands

 7   everything with respect to what is happening here today.  He

 8   has asked me many questions, I've answered all of his

 9   questions, and we have gone over all the proposed questions

10   from the government, which he understands, and he's prepared

11   to answer truthfully all of your Honor's questions.

12              THE COURT:  Approximately how many times have you met

13   or spoken with Mr. Hernandez about the conflict issue?

14              MS. FLORIO:  About six.

15              THE COURT:  Most recently when?

16              MS. FLORIO:  Today.

17              THE COURT:  Are you confident that he understands the

18   nature of the conflict issues presented?

19              MS. FLORIO:  I am super confident.

20              THE COURT:  That is good to hear.

21              Let me identify an area or two just to make sure that

22   you recall going over it with him.

23              The government identifies in its proposed examination

24   this possibility, which is that Mr. Lazzaro might have some

25   information that he's obtained from Mr. Jordan or from
```

J3SsHERc

Mr. Walter that could be helpful to Mr. Hernandez at some point
in this representation, but that he would be prohibited from
using that information because he owes a duty of
confidentiality to his former clients.

Is that one of the potential conflicts you have gone
over?

MS. FLORIO:  Absolutely.

THE COURT:  Look, I'll identify another one, which is
as follows:  It is obviously a public fact that Mr. Hernandez
is party to a cooperation agreement.  One possibility is that
to the extent Mr. Lazzaro feels an ongoing duty or sense of
obligation to his former client, it is at least theoretically
possible that Mr. Lazzaro's guidance to Mr. Hernandez about
what to share with the government and how to share it and how
to put it could be affected by the way it would make
Mr. Lazzaro's former clients.

Look, of course I'm not suggesting that Mr. Lazzaro
would, in any way, shirk on his obligations to Mr. Hernandez,
but if he ever felt in some way that there was a tension of
conflict between the interests of his former clients and the
interest of his present ones, that is the purpose of the Curcio
inquiry.  It could lead a lawyer in that position to steer the
client not to say as damaging things about the codefendants as
the facts might warrant.  That is a theoretical possibility.

Is that a scenario you've gone over?

J3SsHERc

1     MS. FLORIO:  We have gone over that as well.

2          THE COURT:  Have you gone over with Mr. Hernandez this

3     scenario, which is that if, in theory, a conflicted lawyer

4     steered him or led him or encouraged him to provide less than

5     fully truthful information to the government, that could

6     jeopardize his ongoing cooperation relationship, it could lead

7     the government to reconsider it?

8          MS. FLORIO:  We have discussed that, your Honor.

9          THE COURT:  Are you confident that Mr. Hernandez is

10    fully aware and understands those potential risks?

11         MS. FLORIO:  I'm super confident.

12         THE COURT:  Look, I want to make clear that in

13    identifying these risks, these do not in any way, shape, or

14    form bear on Mr. Lazzaro.  Whoever was party to the prior

15    representation, I would be asking exactly the same questions.

16    The important thing is that the client understand that,

17    regardless of the character, nature of the person, of the

18    lawyer involved, those are risks that are inherent in the

19    situation Mr. Hernandez proposes to be in, which is to say

20    having a lawyer who previously represented people against whom

21    Mr. Hernandez is potentially positioned to cooperate.

22         MS. FLORIO:  Thank you.

23         THE COURT:  Very good.

24         Ms. Florio, anything further you want to share with me

25    about your discussions with Mr. Hernandez about the Curcio

J3SsHERc

1    issue?

2           MS. FLORIO:  Your Honor, all I can tell you is that we

3    have extensively exhausted every possibility.  I've met with

4    him numerous occasions, and actually, I was present with most

5    of the proffer agreements and I've been with Mr. Hernandez from

6    the very beginning, and we have spoken privately about this

7    issue and he is ready to proceed.

8           THE COURT:  All right.  Thank you.

9           Let me thank you, while I have you, for the service

10   you provided as sole counsel to Mr. Hernandez during the two

11   plus months in which you've been acting alone.

12          MS. FLORIO:  Thank you.

13          THE COURT:  With that, I'm going to have Mr. Smallman,

14   please swear Mr. Hernandez.

15          Mr. Hernandez, would you please rise.

16          (Defendant sworn)

17          THE COURT:  Mr. Hernandez, you may be seated.  Just

18   kindly move the microphone close to Mr. Hernandez.

19          Mr. Hernandez, I am going to ask you just a few

20   background questions.  The purposes of these questions is to

21   solely make sure that I can satisfy myself that you understand

22   what is going on here today and that there is nothing

23   interfering with your ability to understand.

24          All right.  I've asked you a few of these at a prior

25   proceeding.  I'm just going to start right from the top.

J3SsHERc

1           How old are you?

2           THE DEFENDANT:  22, your Honor.

3           THE COURT:  All right.  The last education you've

4    received is?

5           THE DEFENDANT:  GED.

6           THE COURT:  GED.

7           What was the last year in which you attended school?

8           THE DEFENDANT:  I believe the eleventh grade.

9           THE COURT:  Where was that?

10          THE DEFENDANT:  Legacy High School.

11          THE COURT:  When did you get the GED?

12          THE DEFENDANT:  I received it, I believe, April 10 of

13   2018.

14          THE COURT:  All right.  Thank you.

15          Are you currently taking any medications?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  All right.  Are you currently under the

18   care of a doctor or a psychiatrist?

19          THE DEFENDANT:  No, your Honor.

20          THE COURT:  In the past 24 hours, have you taken any

21   alcohol, medications, drugs of any form?

22          THE DEFENDANT:  No, your Honor.

23          THE COURT:  All right.  Is there anything today that

24   is interfering with your ability to understand what is

25   happening here today?

J3SsHERc

| 1 | THE DEFENDANT:  No, your Honor. |

THE COURT:  All right.  I was watching you while I was speaking to Ms. Florio and you seemed very alert and locked in on what she and I were saying to each other.

Were you able to understand that conversation?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand what the purpose is of today's proceeding?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Ms. Florio, do you have any doubt as to your client's competence to engage in a Curcio inquiry today?

MS. FLORIO:  I have no doubt.

THE COURT:  Government, how about you?

MR. WARREN:  No, your Honor.  Thank you.

THE COURT:  All right.  Mr. Hernandez, I'm now going to pivot to asking you questions about the role of Mr. Lazzaro.

If at any point you want to confer with Ms. Florio, feel free to do so.

THE DEFENDANT:  OK.

THE COURT:  First of all, I'm aware that Mr. Lazzaro represented you in this case up to the point when I ordered him to step aside.

Focusing on that period up to the point where I asked him to step aside, were you satisfied with the services that he provided to you up to that point?

14

J3SsHERc

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  All right.  Has Mr. Lazzaro informed you

3    that he previously represented your codefendants -- Kifano

4    Jordan and Faheem Walter -- in prior state court criminal

5    proceedings?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  And at what point did he inform you of

8    that?

9            THE DEFENDANT:  Mr. Jordan was the one who referred me

10   to Mr. Lazzaro for a state case that I had.

11           THE COURT:  I see.

12           So on account of Mr. Jordan's referring you, you

13   understood that Mr. Jordan had used Mr. Lazzaro as a lawyer

14   before?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  All right.  When did you become aware that

17   Mr. Lazzaro had represented Mr. Walter before?

18           THE DEFENDANT:  Um, about -- um, October, um -- I

19   think -- I don't know if it was October or November of 2018.

20           THE COURT:  So the fall?

21           THE DEFENDANT:  In or about.

22           THE COURT:  In the fall, you became aware of that

23   prior representation?

24           THE DEFENDANT:  Yes, before I was arrested for this

25   crime.

J3SsHERc

1              THE COURT:  How did that come up?

2              THE DEFENDANT:  I guess Mr. Lazzaro made an appearance

3     for Mr. Walter, it was like a one -- one-time thing.

4              THE COURT:  Unrelated to this case?

5              THE DEFENDANT:  Yes.  Yes, your Honor.

6              THE COURT:  All right.  You were aware at that time of

7     Mr. Lazzaro's representation of Mr. Walter?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  All right.  Do you understand that the

10    fact that Mr. Lazzaro previously represented Mr. Jordan and

11    Mr. Walter and likely had conversations with them that are

12    likely covered by attorney-client privilege?

13             Do you understand that that could lead him to have

14    divided loyalties between yourself and those two former clients

15    of his, do you understand that that is a possibility?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  All right.  I want to identify for you,

18    along the lines of the conversation I had with Ms. Florio, a

19    couple of examples of ways in which Mr. Lazzaro's prior

20    representation of those two people or his privileged

21    conversations with them might adversely affect his

22    representation of you or might limit the things he can do on

23    your behalf.

24             First of all, are you aware that it is possible that

25    Mr. Lazzaro has information from Mr. Jordan or Mr. Walter that

J3SsHERc

1      might be helpful in representing you in this case, but that he

2      is prohibited from using that information because of his duties

3      of confidentiality to those former clients?

4                  Do you understand that?

5                  THE DEFENDANT:  Yes, your Honor, I do.

6                  THE COURT:  Are you aware that Mr. Lazzaro, on account

7      of his prior representations of Mr. Jordan and Mr. Walter,

8      might give you advice that is different from the advice he

9      otherwise might have?

10                 Do you understand that is a possibility?

11                 THE DEFENDANT:  Yes, your Honor.

12                 THE COURT:  Do you understand, for example, that it is

13     possible that an attorney in Mr. Lazzaro's position might

14     discourage you in the course of your cooperation from fully

15     disclosing all the incriminating information you have regarding

16     those former clients of his?

17                 THE DEFENDANT:  Yes, your Honor.

18                 THE COURT:  Again, I'm not saying this to impugn

19     Mr. Lazzaro.  Anybody in this situation, I would be asking the

20     exact same questions about.

21                 You understand that?

22                 THE DEFENDANT:  Yes, your Honor.

23                 THE COURT:  All right.  Let me ask you now, I put

24     questions to you.  I'm sorry, one more question.

25                 Do you understand that if Mr. Lazzaro were to lead you

J3SsHERc

```
1   to not tell the truth in your meetings with the government,

2   that could then subject you to consequences, including the

3   potential termination of your cooperation with the government,

4   cooperation agreement with the government?

5             THE DEFENDANT:  Yes, your Honor.  I understand.

6             THE COURT:  All right.  Now, let me turn the floor to

7   you.

8             Part of the purpose of this Curcio proceeding is for a

9   judge to make sure that the defendant understands the nature of

10  the conflict.  I have reviewed the ones that the government

11  thought of, the ones I was able to think of with you.

12            I would like you now to tell me in your own words what

13  your understanding is of the potential conflict of interest

14  presented by this situation.

15            THE DEFENDANT:  OK.  Um, your Honor -- um, I don't see

16  any potential conflict in this situation because Mr. Lazzaro

17  never told me any confidential information from Mr. Jordan or

18  Mr. Walter, and from my understanding is that Mr. Jordan

19  pleaded guilty this morning.  I pleaded guilty January 23.

20            THE COURT:  Look, Mr. Hernandez, first of all,

21  Mr. Walter has not pled guilty.

22            THE DEFENDANT:  I'm sorry, Mr. Jordan.  Sorry.

23            THE COURT:  No, no.  You said it right.  But, look,

24  the point is, I'm asking you not whether there is, in fact,

25  going to be any compromise in the ability of Mr. Lazzaro, in
```

J3SsHERc

1    the work that Mr. Lazzaro does on your behalf if permitted to

2    represent you.  I'm asking you if there is a potential

3    conflict.  I need to understand that you understand the

4    potential conflict.  I appreciate you have confidence in

5    Mr. Lazzaro.  That is not the issue here.

6                THE DEFENDANT:  No, I do understand.

7                THE COURT:  Please, if you need to take a moment with

8    Ms. Florio, please do so, but the question I'm asking for you

9    is, I need to make sure you get it.  I need to make sure that

10   you understand what, in theory, the risk you're taking on is by

11   being represented by somebody who represents two codefendants,

12   and I need to make sure you're able to articulate this in your

13   own words.

14               THE DEFENDANT:  OK.  Can I get a second?

15               THE COURT:  Do you want to take a moment with

16   Ms. Florio?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Go ahead.

19               (Defendant conferring with counsel)

20               THE DEFENDANT:  Um, I understand the conflict in the

21   situation I'm in, knowing that if Mr. Lazzaro told me to

22   withhold any information or provide any information about

23   Mr. Walter or Mr. Jordan.  I know that could be a conflict with

24   any of the proffers I did with the government.  My cooperation

25   agreement could be terminated, and there was nothing

J3SsHERc

1   Mr. Lazzaro could tell me that would benefit any of my

2   information that I provided the government.

3            THE COURT:  Look, do you understand that, in theory,

4   Mr. Lazzaro's advice to you might be affected by the fact that

5   two of the people you may be talking about are former clients

6   of his?

7            THE DEFENDANT:  Yes, I understand that.

8            THE COURT:  Do you understand that the advice he might

9   give you might be potentially different from what a lawyer who

10  hadn't previously represented those two people would give you?

11           THE DEFENDANT:  I do understand that, your Honor.

12           THE COURT:  All right.  Do you understand that if that

13  led you to say something, for example, to the government that

14  was less than fully accurate or, for that matter, to testify in

15  a way that was less than fully accurate, that could have very

16  severe consequences for you?

17           THE DEFENDANT:  Yes, your Honor.  I understand.

18           THE COURT:  Do you understand that one danger to you

19  is that none of us here can foresee all of the possible

20  conflicts that could arise because Mr. Lazzaro previously

21  represented two people who are codefendants in your case?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  In other words, we're all doing our best

24  to identify situations or scenarios that could arise, but cases

25  take funny turns, and we may all sitting here today in late

J3SsHERc

```
 1    March not being able to foresee where the case will be six
 2    months from now.  I can't foresee every way in which the
 3    multiple roles Mr. Lazzaro has played in connection with
 4    defendants in this indictment could ultimately hurt you, but
 5    there may be things we are not thinking of or can't foresee
 6    now.
 7              Do you understand that?
 8              THE DEFENDANT:  Yes, your Honor.  I understand.
 9              THE COURT:  Do you understand that as a defendant in a
10    criminal case, you are entitled to the assistance of an
11    attorney whose loyalty to you is undivided, who is not subject
12    to any factor that might in any way intrude upon the attorney's
13    loyalty to your interests?
14              THE DEFENDANT:  Yes, your Honor.
15              THE COURT:  In other words, you understand that you
16    are entitled to an attorney who has only your interests in mind
17    and not the interests of any other client?
18              THE DEFENDANT:  Yes, your Honor.
19              THE COURT:  All right.  Have you received any
20    inducements or any promises or any threats with regard to your
21    choice of counsel in this case?
22              THE DEFENDANT:  No, your Honor.
23              THE COURT:  Have you consulted with any attorney other
24    than Mr. Lazzaro about the dangers to you presented by this
25    potential conflict of interest?
```

J3SsHERc

```
1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  Who is that?

3              THE DEFENDANT:  Ms. Dawn Florio.

4              THE COURT:  All right.  How much time have you spent

5    speaking with Ms. Florio about this issue?

6              THE DEFENDANT:  It was about six times.  What she

7    said.

8              THE COURT:  Her estimate is about right?

9              THE DEFENDANT:  Yeah.  There about, yeah.

10             THE COURT:  Did you feel like you spent enough time

11   with her to really get to the bottom of the issues here?

12             THE DEFENDANT:  Yes, I have, your Honor.

13             THE COURT:  Were you satisfied with the quality of her

14   guidance to you?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  All right.  You have a right under the law

17   to consult with an attorney who is free from any conflict of

18   interest about this issue, and Ms. Florio is that attorney.

19             Do you understand that if you want additional time to

20   confer with her about the issue, I will give that to you.  If

21   there is anything that has happened, for example, in our

22   discussions so far today that leads you to want to pause and

23   spend more time with Ms. Florio about the issue, I will be glad

24   to give you that time.

25             Do you understand that that is available to you, if
```

J3SsHERc

1    you want it?

2                THE DEFENDANT:  Yes, your Honor.  I do understand.

3                THE COURT:  All right.  I'm prepared to adjourn the

4    remainder of this proceeding so that you could continue your

5    conversation with Ms. Florio about the potential conflict of

6    interest that I've described to you today.

7                Ms. Florio, I take it you're still available to

8    Mr. Hernandez for that purpose?

9                MS. FLORIO:  I am.

10               THE COURT:  All right.  Would you prefer to adjourn

11   so you can give additional thought to that matter, or are you

12   prepared to continue and give me as they say your final answer

13   now?

14               THE DEFENDANT:  Yeah, I'll give a final answer.

15               THE COURT:  All right.  In other words, you feel like

16   you've given enough thought to the issue to let me know, and

17   I'm about to put the question to you, whether or not you waive

18   your right to a conflict-free counsel?

19               THE DEFENDANT:  Yes, your Honor.

20               THE COURT:  All right.  After considering all that

21   I have said today about the ways in which Mr. Lazzaro's prior

22   representation of Mr. Jordan and Mr. Walter may adversely

23   affect you in this case, do you believe that it is in your best

24   interest to continue with him alongside Ms. Florio as your

25   attorney?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand that by choosing to

3    continue with Mr. Lazzaro as your attorney, you are waiving

4    your right to be represented solely by an attorney who has no

5    conflict of interest?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Are you knowingly and voluntarily waiving

8    your right to conflict-free representation?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Do you agree to waive any post-conviction

11   argument on appeal or otherwise that by virtue of Mr. Lazzaro's

12   prior representation of Mr. Jordan or Mr. Walter, you were

13   denied effective assistance of counsel by Mr. Lazzaro?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  All right.  Is there anything that I have

16   said that you wish to have explained further?

17         THE DEFENDANT:  No, your Honor.

18         THE COURT:  Government, do you believe there are any

19   additional questions I need to put to the defendant?

20         MR. WARREN:  No, your Honor.  Thank you.

21         THE COURT:  Ms. Florio, do you?

22         MS. FLORIO:  No, your Honor.

23         THE COURT:  All right.  I have carefully examined

24   Mr. Hernandez on the issues at hand.  I've also been very

25   attentive in watching him and listening to him and evaluating

J3SsHERc

1    the quality of his responses.  It is clear to me that he

2    understands the nature of the problem presented here.  It is

3    also quite clear to me that he spent a lot of productive time

4    with Ms. Florio working through the possible angles and

5    possible issues here.

6            I find that Mr. Hernandez has knowingly and

7    voluntarily and willfully waived his right to conflict-free

8    representation.  I therefore authorize Mr. Lazzaro to resume

9    representation of Mr. Hernandez.

10           It is my expectation that, Ms. Florio, you are in

11   it for the long haul and will be jointly representing

12   Mr. Hernandez throughout this case, is that correct?

13           MS. FLORIO:  That is correct.

14           THE COURT:  Mr. Hernandez, I'll just say the following

15   to you:  You're fortunate to have not one, but two fine lawyers

16   represent you.

17           If there is any point at which a subject comes up

18   where any of the concerns that I have raised with you or any

19   other concern of a similar nature, that is to Mr. Lazzaro's

20   guidance to you could be affected by his prior representation,

21   anything like that ever comes up, one of the advantages of

22   having Ms. Florio on the team is that she does not labor under

23   any such conflict.

24           So keep in mind that this is something you should

25   continue to be mindful of.  If there is ever a point you have

J3SsHERc

any concern about the independence of Mr. Lazzaro's advice, you

should by all means take up the matter at hand independently

with Ms. Florio.

         Do you understand?

         THE DEFENDANT:  Yes, your Honor, I do.

         THE COURT:  Anything further from any counsel?

         MR. WARREN:  No, your Honor.

         MS. FLORIO:  No, your Honor.

         THE COURT:  Thank you.

         We stand adjourned.

         (Adjourned)