Law Offices
# LAZZARO LAW FIRM, P.C.
360 COURT STREET
SUITE 3
BROOKLYN, NEW YORK 11231

TELEPHONE:  (718)   488-1900
TELECOPIER:  (718)   488-1927
EMAIL: LAZZAROLAW@AOL.COM

LANCE LAZZARO

RANDALL LAZZARO *

———————————

JAMES KILDUFF *
JAMES KIRSHNER
ROGER GREENBERG

\* ADMITTED IN NY & NJ

December 11, 2019

Honorable Paul A. Engelmayer
United States District Court Judge
Thurgood Marshall U.S. Courthouse
Southern District of New York
40 Foley Square
New York, New York  10007

**Re:** **United States v. Daniel Hernandez**
      Docket No.:  S5 18-CR-0834-004 (PAE)

Dear Judge Engelmayer:

    I represent Daniel Hernandez with regard to the above-referenced case.  I am writing this letter on behalf of Mr. Hernandez, who is scheduled to be sentenced before your Honor on December 18, 2019 at 10:00 a.m.  Mr. Hernandez pleaded guilty to multiple counts, including Racketeering, 18 U.S.C. § 1962, and other related charges.

    Pursuant to a plea agreement, the government agreed that if Mr. Hernandez provided "substantial assistance to the law enforcement authorities," then the government would "file a motion pursuant to U.S.S.G. § 5K1.1."   For the reasons discussed more thoroughly below, given Mr. Hernandez's limited criminal history, the attached character letters, and his extraordinary assistance and cooperation with the government, I respectfully request that your Honor sentence Mr. Hernandez to time served.  Notably, Probation is also recommending a sentence of time served.  See PSR at 53.

    Simply put, from the very first opportunity, Mr. Hernandez has fully cooperated with the government and provided extraordinary assistance, doing absolutely everything that has been asked of him, despite the very serious threat to both his and his family's safety.  Mr. Hernandez is a rap artist who foolishly joined the Nine Trey Gansta Bloods (hereinafter "Nine Trey") in an attempt to promote a gangster persona which would help him sell his music and advance his career.  Being only 21 years of age, Mr. Hernandez's desire to break out of poverty and provide for his family and young daughter clouded his judgment in his quest for fame.  As a result, he joined the gang without fully appreciating the consequences of this decision.  Within a one-year time span, he became surrounded by older seasoned gang members who did not have his best interest at heart.  This decision of joining Nine Trey led to his rise and ultimately to his downfall.

While Mr. Hernandez admittedly engaged in criminal acts with various Nine Trey members, despite the grave risk, he later publicly denounced Nine Trey, even before he was ever arrested and before he began cooperating with the government. He denounced the gang both on a radio show and via a video posted on social media. Days after his public disassociation with Nine Trey, Mr. Hernandez was arrested, and began his extraordinary assistance at the earliest opportunity.

Not only did Mr. Hernandez provide truthful and extensive information pertaining to his Nine Trey involvement, but he also apprised the government of additional criminal conduct of which the government was previously unaware. Moreover, despite the significant threat to his music career and his personal safety, Mr. Hernandez, a very well known public figure, publically testified both credibly and powerfully in a highly publicized trial with led to the convictions of two Nine Trey members (Aljermiah Mack and Anthony Ellison). Considering his significant cooperation and assistance, there is simply nothing else that he could have done to further his cooperation. He did everything asked of him, and at times even more.

## SECTION 5K1.1 FACTORS

Even the government has acknowledged that "Mr. Hernandez's cooperation was extraordinary." See Govt. 5K letter, p. 8. Section 5K1.1 of the United States Sentencing Guidelines provides five factors which sentencing courts are encouraged to consider in determining an appropriate reduction in sentencing a defendant who has rendered substantial assistance. See U.S.S.G. § 5K1.1(a). An analysis of these five factors illustrates the extensive level of cooperation provided by Mr. Hernandez and clearly shows how his assistance was not only substantial, but extraordinary.

### 1. "[S]ignificance and usefulness of the defendant's assistance" [§ 5K1.1(a)(1)]

In consideration of this first factor, the government clearly recognizes that Mr. Hernandez's "assistance was both incredibly significant and extremely useful." See Govt. 5K letter, p. 8. From the very beginning of this case, within a day of his arrest and arraignment in court, Mr. Hernandez began providing information to the government. He gave an inside look at Nine Trey, and its various criminal activities, including numerous things which had previously been unknown to the government before meeting with Mr. Hernandez. He vividly described Nine Trey's organization and structure, including its members and leaders, while specifically articulating various acts of violence.

The defendant's assistance was both incredibly significant and extremely useful. The defendant provided an insider's view of Nine Trey and a first-hand account of many acts of violence that the Government otherwise did not have. He provided critical and detailed insight into the organization and structure of Nine Trey, its members and leaders, and the gang's violent acts. With Mr. Hernandez's assistance, the government was able to charge additional counts and defendants which had not been included in the original indictment. Solely with the assistance of Mr. Hernandez, the government was able to charge defendants Anthony Ellison, Denard Butler, Kintea McKenzie, and Aljermiah Mack. That's four dangerous criminals off the streets entirely because

of the cooperation and assistance provided by Mr. Hernandez.

Mr. Hernandez also provided extremely valuable assistance in interpreting text messages, social media posts, and telephone calls which are often difficult to decipher as a result of coded gang lingo and confusing conversations between co-conspirators. Mr. Hernandez explained thousands of pages of text messages. He reviewed countless recorded phone calls and video surveillance in order to critically identify individuals and their roles in various criminal activities. Mr. Hernandez helped provide context to an enormous amount of evidence, providing valuable assistance to law enforcement and prosecutors, while often explaining things otherwise unknown to the government. Mr. Hernandez's assistance even led to investigations involving additional agencies in other jurisdictions.

The government's 5K letter also discusses the instrumental role that Mr. Hernandez played in achieving speedy pleas and convictions of virtually all of his co-defendants. See Govt. 5K letter, p. 9. The government stresses that Mr. Hernandez's unsealed guilty plea so early in this case was instrumental in bringing co-defendants to the table to discuss pleading guilty even before pre-trial motions.

> The weight of the evidence, coupled with the knowledge that Hernandez was ready, willing, and able to testify to describe the acts of violence and how they were related to Nine Trey, were significant factors in the co-defendants' decisions to plead guilty. Unlike in other cases, the fact that Hernandez's cooperation was public well in advance of trial let his co-defendants know for certain that Hernandez would be testifying against them should they decide to proceed to trial. This was incredibly significant from the Government's perspective in reaching pre-trial dispositions with nearly all of Hernandez's co-defendants. Id. at p. 9.

Finally, Mr. Hernandez's most extraordinary and substantial assistance to the government occurred when he testified during the trials of Anthony Ellison and Aljermiah Mack. The level of risk to Mr. Hernandez's safety after testifying in open court against two active gang members is immeasurable. Mr. Hernandez was well aware of this risk, yet nevertheless testified for three days, providing the government and the sitting jury with a credible and detailed explanation of Nine Trey, its criminal activities, and the specific unlawful actions of Ellison and Mack. With the help of Mr. Hernandez's testimony, the jury convicted both Ellison and Mack of very serious felony offenses. In fact, in Ellison's case, Mr. Hernandez was the victim of the kidnaping for which Ellison was convicted based upon the testimony of Mr. Hernandez. Ellison's kidnaping of Mr. Hernandez involved Mr. Hernandez being beaten and robbed at gun point by Ellison. Mr. Hernandez describes this event as a very scary and traumatic experience.

It is impossible to ignore the courage and integrity shown by Mr. Hernandez in testifying in such a public forum about such salacious activities. In addition to the significant safety risks involved in testifying during such a trial, Mr. Hernandez also risked career suicide, given that the hip hop community seriously discourages cooperating with the government and providing testimony, or any information, against another individual. Despite these substantial dangers and risks, Mr.

Hernandez calmly testified in open court against his co-defendants, clearly providing substantial cooperation and extraordinary assistance to the government.

### 2. "[T]ruthfulness, completeness, and reliability" of the defendant's information and testimony [§ 5K1.1(a)(2)]

The government has conceded that "[Mr. Hernandez] has been truthful with the Government from the outset of his cooperation." Beginning on the day after his arrest and arraignment, Mr. Hernandez has been forthcoming regarding both his conduct and the unlawful activities of numerous Nine Trey gang members. Mr. Hernandez informed the government about things they knew and about things they were unaware of, regardless of whether the information could be damaging to Mr. Hernandez and any potential sentence in the future. Furthermore, Mr. Hernandez's information has been corroborated by other evidence and other witnesses. Given the outcome of the trial and Ellison and Mack, the jury also clearly found Mr. Hernandez credible in returning guilty verdicts.

### 3. "[N]ature and extent of the defendant's assistance" [§ 5K1.1(a)(3)]

The government's 5K letter details the extent of Mr. Hernandez's cooperation and assistance to the government. The government's 5K letter details the extent to which Mr. Hernandez assisted the government. Mr. Hernandez met with the government 26 times, including seven detailed meetings before pleading guilty. As discussed above, Mr. Hernandez significantly helped the government investigate and charge his co-defendants, including additional previously uncharged co-defendants, and he was a key witness who contributed to the convictions of several co-defendants. His credible testimony helped secure guilty verdicts against Nine Trey members Ellison and Mack.

### 4. [I]njury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance" [§ 5K1.1(a)(4)]

The level of risk to Mr. Hernandez and his family as a result of his cooperation with the government in this case is immeasurable. Considering all of the facts and circumstances of this case, it seems clear that the risk faced by Mr. Hernandez as a result his assistance in this case is far worse than virtually all other cooperating defendants. Nine Trey is one of the most violent sets of the United Bloods Nation, claiming members throughout the country. Mr. Hernandez will likely be looking over his shoulder, or relying on added security, for decades to come. He may also be forced to repeatedly move his family several times in order to keep them safe.

Mr. Hernandez's cooperation and his testimony at trial against Ellison and Mack was widely covered by numerous media outlets. Furthermore, other gang members and individuals in the hip hop community have criticized him for cooperating and have openly questioned whether the defendant's safety could ever be guaranteed. As your Honor is well aware, Mr. Hernandez's trial testimony was recorded in court and leaked to the media. Undeniably, Mr. Hernandez's life will never be the same as a result of the extraordinary assistance that he provided to the government. He will probably never truly feel safe in public as a result of his decision to do the right thing in this case.

**5.     "[T]imeliness of the defendant's assistance" [§ 5K1.1(a)(5)]**

Mr. Hernandez cooperated in this case at the earliest possible opportunity. Even before being arrested, Mr. Hernandez provided law enforcement with information about Nine Trey when they discussed a potential threat that had already been posed against Mr. Hernandez. Then, in the two days following his arrest, Mr. Hernandez engaged in detailed proffer sessions. Mr. Hernandez's timely cooperation was instrumental in allowing the government to investigate and charge additional crimes and defendants. The government acknowledges "[a]bsent [Mr. Hernandez's] cooperation, the Government would not have been able to charge Denard Butler, Kintea McKenzie, Ellison, or Mack in the racketeering conspiracy and crimes in furtherance of the Nine Trey racketeering conspiracy." Govt. 5K letter, p. 11. The government also recognizes that Mr. Hernandez's timely assistance allowed them to prepare for trial and pursue dispositions, which led to convictions for all defendants.

## OTHER FACTORS TO CONSIDER

While Mr. Hernandez is a world famous rap artist who has created the Tekashi 6ix9ine persona, known for being flamboyant and somewhat gangster, I urge your Honor to read the numerous character letters in order to get a better sense of who Daniel Hernandez is, as opposed to the publicized character portrayed and glorified in the media. The character letters talk about Daniel Hernandez as a kind and respectful individual. It's worth noting that while Mr. Hernandez was admittedly a Nine Trey member, he remained associated with Nine Trey for just about a year before denouncing the gang. He is described as professional and extremely generous to fans. Mr. Hernandez has performed numerous acts of charity and received various certificates recognizing his civic contributions to multiple communities in New York and California. Anyone who has had the opportunity to meet Daniel Hernandez, and gets to know him as an individual (not merely as a rapper from a song or in a video), has truly come to like him and has nothing but positive things to say about Daniel Hernandez.

For example, Raymond Ruiz, who is a real estate broker, writes in his letter that he was initially reluctant to associate himself with Mr. Hernandez based upon the public portrayal of Tekashi 6ix9ine; however, after having an opportunity to meet and speak with Mr. Hernandez, Mr. Ruiz found Mr. Hernandez to be very professional, kind, and generous. In fact, numerous letters discuss Mr. Hernandez's extreme generosity, including dedicating a lot of time to charities for children with cancer.

Martha O'Connell's letter talks about a kindergarten student suffering from terminal brain cancer who wished for an opportunity to meet Mr. Hernandez. Ms. O'Connell describes how Mr. Hernandez traveled from Philadelphia to New Jersey to meet this young boy and how the two of them proceeded to have a great time together. They talked, played video games, and also sang and danced to music, with Mr. Hernandez insisting that his manager play only clean versions of his music. Ms. O'Connell even later learned that Mr. Hernandez had paid the boy's parents' rent for an entire year so that the parents could solely focus on their son. Ms. O'Connell concluded her letter

stating "[h]ad I not had the opportunity to spend time in his company, I would never have known him to be the caring, sensitive and compassionate young man I truly believe him to be."

There is also a letter from John Rivera, who discusses his charity, The Cristian Rivera Foundation, which seeks to raise awareness and support research for a specific form of childhood brain cancer. Mr. Rivera states that Mr. Hernandez made a "significant monetary contribution" and also volunteered several guest appearances for the charity. Carlos Pina's letter also mentions various charitable acts performed by Mr. Hernandez, including bringing Christmas presents to children in a medical hospital. See also Elis Pacheco letter. Another letter submitted by Mr. Hernandez's record label, TenThousand Projects, LLC, describes Mr. Hernandez as intelligent and creative, but also outlines many of Mr. Hernandez's charitable acts. It mentions Mr. Hernandez's return to his high school, where he gave an inspirational speech and donated $10,000 to students. He later visited the slums of Puerto Rico, where Mr. Hernandez handed out a total of $30,000 in cash to a variety of homeless individuals walking the streets. The letter goes on to discuss other kind and generous acts in Chicago and Brooklyn, and his involvement with the Make A Wish Foundation, which introduced him to a 7-year-old suffering from terminal brain cancer. Mr. Hernandez took her and her entire family school shopping (which he paid for) in order for her parents to focus more on her. These acts of kindness generally go unnoticed; however, these acts should be considered by your Honor in sentencing Mr. Hernandez.

Numerous other letters consistently describe Mr. Hernandez as professional, reliable, respectful, kind, and extremely generous with his fans. We have also included letters from his mother and brother which help to describe Mr. Hernandez's childhood and some of the difficulties that he encountered growing up in Brooklyn and the death of his step-father, who was murdered in 2010, when Mr. Hernandez was just 14 years old. His mother talks about how the death of his step-father absolutely crushed the family, both emotionally and financially.

His step-father's death was particularly hard on Mr. Hernandez, losing the only person whom he considered his father. Shortly after his step-father's death, Mr. Hernandez was hospitalized for depression and anxiety after losing over 30 pounds. Furthermore, without the help of his step-father, his family's financial difficulties became severe and somewhat desperate. He had a very difficult time growing up, often lacking some of the necessities that many children take for granted. For example, often times both food and even clothing were scarce. This forced him to begin working at 14, taking any odd job that he could find. He stopped attending school to work more and help support his family.

Being physically, psychologically, and emotionally shattered, Mr. Hernandez sought comfort in music. When Mr. Hernandez started to achieve some musical success and began earning larger amounts of money, his judgment became clouded and he found himself making poor decisions. One of those poor decisions was of course deciding to associate himself with Nine Trey. His powerful desire to end the struggle that he experienced as a teenager, along with his need to help his family and achieve stardom, caused him to foolishly commingle with gang members whom Mr. Hernandez blindly believed to be his ticket to achieving financial success and international fame. Nevertheless, his mother says that even when her son found success, his public persona may have changed, but

"[h]is public image and appearance does not reflect that heart that he always had and still has."

Another group of letters are written by various people who encountered Mr. Hernandez overseas while he was out of the country on tour. They all describe Mr. Hernandez as a great performer who is great with fans. Again, those who have the opportunity to meet Mr. Hernandez, regardless of the circumstances, are impressed by his sincere personality and they generally develop a fondness for him and his ingratiating disposition.

Please also consider the attached letter of Daniel Hernandez, in which he expresses extreme remorse for his actions and realizes the harm that he has caused. He understands that if given a second chance by this Court, he will strive to be role model so that others do not make the same mistakes. It is his hope that no future aspiring artists will foolishly join a gang in an attempt to promote a gangster persona in an effort to sell more music and advance one's career. He also hopes to do everything possible to rebuild his relationship with his four year old daughter, whom he has not seen since being arrested.

Finally, in computing Mr. Hernandez's criminal history category, the PSR erroneously applies a two-point enhancement which should not have been applied. See PSR at 23, ¶ 113. The PSR incorrectly adds two points to Mr. Hernandez's criminal history computation using section 4A1.1(2) of the United States Sentencing Guidelines. The PSR suggests that this two-point enhancement is warranted based upon the misconception that Mr. Hernandez had committed the offenses charged in this case while he was under a "criminal justice sentence." In fact, Mr. Hernandez was never under a "criminal justice sentence" at the time that he committed any of the offenses charged in this case.

According to subdivision (d) of section 4A1.1 of the United States Sentencing Guidelines, two points should be added to a defendant's criminal history computation if he "committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Under the commentary of USSG § 4A1.1(2), a "criminal justice sentence" is defined as a "sentence countable under § 4A1.2 (Definitions and Instructions for Computing Criminal History) having a custodial or supervisory component..."

On October 20, 2015, Mr. Hernandez pleaded guilty to Use of a Child in a Sexual Performance, Penal Law § 263.05; however, he was not sentenced pursuant to this guilty plea until October 26, 2018. All of the offenses committed by Mr. Hernandez in this case occurred before October 26, 2018. Therefore, Mr. Hernandez did not commit any offenses while under a "criminal justice sentence," he had only pleaded guilty and had not been sentenced; and accordingly, the two-point enhancement under USSG § 4A1.1(2) is inappropriate in Mr. Hernandez' case. While pursuant to Mr. Hernandez' plea, he was required to satisfy various conditions before he was ultimately sentenced, he was not sentenced until October 26, 2018, and Mr. Hernandez' post-plea yet pre-sentence status does not constitute being "under a criminal justice sentence," as per sections 4A1.1(2) and 4A1.2.

Section 4A1.2 does discuss circumstances where an individual has been "convicted of an

offense" by guilty plea, but not yet sentenced (as was the case with Mr. Hernandez); however, such suspended sentences only constitute sentences, or "criminal justice sentences," in association with subdivision (c) of section 4A1.1, not subdivision (d).  Therefore, a defendant's status after a guilty plea but before being sentenced, regardless of the defendant's post-plea circumstances, cannot constitute a "criminal justice sentence" under USSG §§ 4A1.1(d) and 4A1.2; and accordingly, the defendant's criminal history computation cannot be enhanced by two points pursuant to USSG § 4A1.1(d).  Thus, the PSR erroneously added two points to Mr. Hernandez' criminal history computation, and paragraph 113 should be removed from his PSR.

Considering the issues discussed above, I respectfully request that your Honor sentence Mr. Hernandez to the jail time that he has already served during the duration of his case in light of 18 U.S.C. § 3553(e).  Thank you for your attention herein.  Please contact me if you have any questions or need any additional information.

    Very Truly Yours,

    LAZZARO LAW FIRM, P.C.

    BY:    /s/
    LANCE LAZZARO

cc.:    AUSA Jonathan Rebold
    via e-mail:  jonathan.rebold@usdoj.gov

    AUSA Jacob Warren
    via e-mail:  jacob.warren@usdoj.gov

    AUSA Michael Longyear
    via e-mail:  michael.longyear@usdoj.gov

    Probation Officer Christopher F. Paragano
    via e-mail: christopher_paragano@nysp.uscourts.gov

    Dawn M. Florio
    via e-mail: dawnmflorio@yahoo.com