

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

The Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278

November 13, 2025

**BY ECF AND EMAIL**
The Honorable Paul A. Engelmayer
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re:   *United States v. Daniel Hernandez*, 18 Cr. 834 (PAE)

Dear Judge Engelmayer:

The Government respectfully submits this letter in advance of the November 20, 2025 sentencing of Daniel Hernandez (the "defendant") for violating certain terms of his supervised release. As the Court is aware, on July 23, 2025, Hernandez admitted to two violation of supervised release ("VOSR") specifications, relating to his possession of cocaine and MDMA in his residence. On September 25, 2025, Hernandez admitted to an additional specification, relating to his battery of another individual inside of a Florida shopping mall. For the reasons discussed below, the Government respectfully recommends that the Court sentence Hernandez to a term of imprisonment within the United States Sentencing Guidelines range of 3-to-9 months' imprisonment, to be followed by a new two-year term of supervised release.

**I.   Background**

   **A.   The Underlying Offense Conduct and Convictions**

The Government assumes the Court's familiarity with the defendant's underlying case, but in short, in January 2019, Hernandez pled guilty, pursuant to a cooperation agreement to a nine-count information (the "S5 Information"), charging him with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) ("Count One"); using, carrying, and possessing a firearm, and aiding and abetting the use, carrying, and possession of firearms, some of which were brandished and discharged, in furtherance of the Count One racketeering conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2 ("Count Two"); committing a violent crime in aid of racketeering ("VICAR"), in violation of 18 U.S.C. §§ 1959(a)(5) and 2, in connection with a March 20, 2018 shooting, described below ("Count Three"); using and carrying a firearm and aiding and abetting the use, carrying, and possession of a firearm, which was brandished and discharged in connection with the Count Three VICAR offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2 ("Count Four"); VICAR, in violation of 18 U.S.C. §§ 1959(a)(3) and 2, in connection with an April 3, 2018 shooting, described below ("Count Five"); using and carrying a firearm and aiding and abetting the use, carrying, and possession of a firearm, which was brandished in connection with the Count Five VICAR offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2

("Count Six"); VICAR, in violation of 18 U.S.C. §§ 1959(a)(3) and 2, in connection with a June 2, 2018 shooting, described below ("Count Seven"); using, carrying, and possessing a firearm, and aiding and abetting the use, carrying, and possession of a firearm, which was brandished and discharged, in furtherance of the Count Seven racketeering conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2 ("Count Eight"); and conspiracy to distribute one kilogram and more of heroin, in violation of 21 U.S.C. § 846 ("Count Nine").

The charges in the S5 Information relate to Hernandez's prolonged, and at times violent, involvement in the Nine Trey Gangsta Bloods set of the Bloods street and prison gang ("Nine Trey"). Those violent acts included, among other things: (1) a November 2017 assault by Nine Trey members of Michael Lamar White IV, a/k/a "Trippie Redd," a rap artist with whom Hernandez had animosity; (2) a March 20, 2018 shooting in Times Square, during which Nine Trey codefendant Kifano Jordan fired five bullets into a Sprinter van occupied by an individual known to Hernandez as "Frenchie BSM"; (3) an April 3, 2018 Times Square robbery, committed by Hernandez's fellow Nine Trey gang members and videotaped by Hernandez, following which Hernandez took possession of a firearm used in the robbery; (4) an April 21, 2018 shooting at a public housing complex in Brooklyn, New York; (5) an April 21, 2018 shooting at the Barclays Center in Brooklyn, committed by Nine Trey codefendant Fuguan Lovick, a/k/a "Fu Banga," in connection with a dispute between Hernandez and another rap artist, Caswell Senior, a/k/a "Casanova"; (6) a June 2, 2018 shooting at the W Hotel in Times Square, ordered by Hernandez, in connection with yet another dispute between Hernandez and a rival rap artist (in this case, Keith Cozart a/k/a "Chief Keef"); and (7) a February 21, 2018 brawl at Los Angeles Airport between Hernandez and other Nine Trey members, on one side, and members of a Houston-based music management group, on the other side. Hernandez also personally possessed firearms, including an assault rifle, which Hernandez stored in his apartment during the time-period of an intra-Nine-Trey rivalry between Hernandez and codefendant Anthony Ellison, a/k/a "Harv." Hernandez also offered $50,000 to any member of Nine Trey who retaliated against Ellison for the latter's gunpoint kidnapping and robbery of Hernandez. Finally, in or around October or November 2017, Hernandez helped broker a one-kilogram heroin deal between a Nine Trey member to known to Hernandez as "Pac Man BBA," and another male known to Hernandez as "Jazz."

Hernandez's cooperation was integral in charging and earning convictions against multiple high-ranking Nine Trey members, culminating with his days-long highly publicized testimony at the trial of Nine Trey codefendants Ellison and Alerjermiah Mack, a/k/a "Nuke."

B.  **The Underlying Sentencing**

Hernandez was sentenced on December 18, 2019, following a motion by the Government to sentence him pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines"), and in light of 18 U.S.C. § 3553(e) and the factors set forth in Section 5K1.1(a)(1)–(5) of the Guidelines. The Court determined that his applicable Guidelines range was 459 to 492 months' imprisonment, which, but for the Government's "5K Motion," carried statutory minimum terms of imprisonment of ten years for each of Counts Two, Four, Eight, and Nine, and a seven year mandatory minimum for Count Six.

Notwithstanding Herandez's serious criminal conduct and his significant Guidelines range, the Court ultimately imposed a sentence of twenty-four months' imprisonment on each count (to be served concurrently). The Court also imposed a period of five years' supervised release, which included a special condition that Hernandez perform 300 hours of community service under the supervision of the United States Probation Office ("Probation").

At Hernandez's sentencing proceeding, the Court noted that several factors, most notably the serious nature of Hernandez's criminal conduct, counseled in favor of a significant sentence. (Sent. Tr. 60-77). However, the Court noted, among other things, that Hernandez provided "extraordinary assistance" to the Government and that his "cooperation was impressive, it was game changing, it was complete, and it was brave. It was altogether laudable by every standard by which cooperation is evaluated" and that it warranted a sentence "far, far lower than [Hernandez] would have received had [he] not cooperated." (*Id*. at 60). In imposing a two-year term of imprisonment, the Court noted that had Hernandez "not cooperated and had I instead been sentencing you for the same offenses based on a plea of guilty, please know that the sentence I impose today would have been many multiples of the one I am about to impose." (*Id*. at 91).

Notably, an important factor in the Court's imposition of such a lenient sentence was the Court's belief that Hernandez would not recidivate:

> I do not believe after this experience that you will have any impulse again to commit crimes. I observed you during your testimony. I read your letter to me. I heard what you said today, and I've read the letters that others have submitted about you, and I have reflected on your experience during the past 13 months. Everything I have seen suggests that this has been a searing experience for you, that you have truly accepted responsibility for your crimes, that you have learned a very hard lesson, and that you are a wiser and much more mature man today than when you were arrested.
>
> You have squandered 13 months of liberty so far and counting, and you appear to appreciate how close you came to squandering your life, your family, and your career by messing with a violent gang. More than in most gang cases, your circumstances give me confidence that when you are released from prison and given a second chance, you will not endanger your family, your liberty, your career, and your considerable gifts again.

(*Id*. 87-88). Importantly, the Court the expressly warned Hernandez that he would face serious consequences if he committed any new crimes of violence:

> [I]f you violate the law, you would [] be violating your conditions of supervised release, which could result in your return to prison. I do not expect you to be tempted to engage in violence again. But if you are, remember this. As the judge in your case, I would regard

>violence of any sort as a grave breach of trust, warranting revocation of supervised release, and a return to prison.

(*Id.* 88)

### C. Hernandez's Initial Violations of Supervised Release

On or about October 29, 2024, Hernandez appeared before this Court to be arraigned on several VOSR specifications, including for leaving his judicial district of residence without the permission of the Court or his assigned probation officer; for failing to comply with drug testing as directed by Probation; and for unlawfully using methamphetamine, a controlled substance. Hernandez was ordered detained.

On November 12, 2024, Hernandez admitted to each of five specifications detailed in an amended violation report submitted to the Court on November 4, 2024 by Probation. Among other things, through those specifications, Hernandez admitted that he unlawfully used a controlled substance (methamphetamine), that he failed to comply with drug testing, that he left his district of residence without first gaining permission from Probation, and that he failed to truthfully answer certain inquiries of his assigned probation officer.

A sentencing hearing was held immediately thereafter, whereupon the Court imposed, among other things, a custodial sentence of 45 days' imprisonment, to be followed by a new one-year term of supervised release, during which the defendant was required to be subjected to home incarceration for the first 30 days, home detention during the next 30 days, and to a curfew during the following 30 days, all 90 days of which the defendant was to be subjected to electronic monitoring. The defendant's new term of supervised release also required him to complete his outstanding community service obligations no later than one month before the end of his new term of supervised release.

On December 12, 2024, Hernandez was released from the custody of the Bureau of Prisons and commenced a new one-year term of supervised release.

### D. The Current Violations of Supervised Release

On or about February 28, 2025—*i.e.*, approximately two-and-a-half months after Hernandez began serving his current term of supervised release, and while he was still subjected to a curfew and electronic monitoring—Probation officers in the Southern District of Florida and officers with the Palm Beach County Sheriff's Office conducted a search of Hernandez's residence. Among other things, these officers recovered from Hernandez's bedroom a bag containing cocaine residue and approximately three pills containing MDMA.

On or about April 21, 2025, Hernandez was arraigned upon four VOSR specifications relating to the controlled substances recovered from his bedroom. On or about July 23, 2025, Hernandez appeared before this Court and admitted to two specifications—one related to each of the controlled substances that he possessed—and sentencing was scheduled for September 25,

2025. Each specification is a Grade C violation, carrying a Guidelines range of 3-to-9 months' imprisonment.

On or about August 8, 2025, while the defendant was pending sentencing on the above-mentioned VOSR specifications, the defendant and an associate ("CC-1") assaulted another individual ("Victim-1") while inside of a mall in Wellington, Florida. While some of the facts surrounding this event are apparently in dispute, the following appears to be uncontested. While inside of a store on the mall's ground floor ("Store-1"), Victim-1 made derogatory comments to Hernandez regarding Hernandez's well-publicized cooperation in the Nine Trey case. Thereafter, Victim-1 walked away from Hernandez, left Store-1, and took an escalator to the mall's second floor. Hernandez and CC-1 subsequently took the same escalator to the second floor, whereupon they located Victim-1, knocked Victim-1 to the ground, and began punching and kicking Victim-1. Upon realizing that Victim-1 had a firearm on Victim-1's person, Hernandez and CC-1 fled from Victim-1 and the mall. Victim-1 denied medical treatment and it appears Victim-1 did not suffer any meaningful physical injuries.

On or about September 25, 2025, Hernandez admitted to a specification related to his battery of Victim-1, a Grade C violation carrying a Guidelines range of 3-to-9 months' imprisonment.

Over the past several months, Hernandez has completed his community service obligation.

## II. Applicable Law

In sentencing the defendant, the Court must consider the factors listed in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), and (a)(4)-(7), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant, and the applicable Guidelines range. *See* 18 U.S.C. §§ 3553(a); 3583(e)(3).

In assessing the appropriate sentence for violating the conditions of supervised release, "the primary goal" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b).

The focus in assessing a violation of supervised release should be based on the "'actual conduct' underlying the charged violation . . . regardless of whether or how the defendant may be charged in a criminal prosecution for the same underlying conduct." *United States v. McNeil*, 415 F.3d 273, 278 (2d Cir. 2005). Consideration of "actual conduct," as relevant to sentencing, is held to a preponderance of the evidence standard. *United States v. Vaughn*, 430 F.3d 518, 520 (2d Cir. 2005).

"When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment," the Court has the discretion to impose a new term of supervised release. 18 U.S.C. § 3583(h).

### III. Analysis

A Guidelines sentence of 3-to-9 months' imprisonment to be followed by a new multi-year term of supervision, is sufficient but not greater than necessary in this case.

*First*, the nature and circumstances of the offense warrant a term of imprisonment and a new term of supervised release. 18 U.S.C. § 3553(a)(1). Hernandez violated the trust this Court placed in him following his release from custody on his underlying charges. He did so first, by possessing controlled substances, just months after serving a VOSR sentence for similar conduct. More importantly, and shockingly while pending sentencing, Hernandez violated the Court's trust that Hernandez would not cause harm to others. Indeed, at the sentencing proceeding for Hernandez's criminal convictions, this Court explicitly warned Hernandez against committing any crimes of violence, noting that this alone would warrant a new term of imprisonment. Nevertheless, Hernandez violated the Court's trust through an unwarranted act of violence. While Hernandez was no doubt verbally provoked inside of Store-1, that verbal dispute never escalated to violence, and the dispute ended entirely when Victim-1 walked away and ascended the escalator of the mall. Hernandez had no legal or moral justification in following Victim-1 to the second floor and assaulting Victim-1 with the aid of another. It does not appear that Hernandez would have stopped assaulting Victim-1 had he not realized mid-assault that Victim-1 was armed with a pistol.

*Second*, a Guidelines sentence is necessary for purposes of general deterrence. 18 U.S.C. § 3553(a)(2)(B). While it brings the Government no joy to seek a custodial prison sentence for a former cooperator, the Court must send a message to Hernandez and other Government cooperators—or those considering cooperating with the Government—that they are not above the law by virtue of their status as cooperators, and that when they earn leniency at sentencing, this is not to be taken as a green-light to recidivate.

*Third*, a meaningful term of imprisonment followed by a new term of supervised release is necessary for the purpose of specific deterrence. 18 U.S.C. § 3553(a)(2)(C). Just one year ago, Hernandez was sentenced to a term of 45-days imprisonment and a new one-year term of supervised release, in connection with a series of non-violent specifications, relating to his use of controlled substances, his failure to appear for drug testing, his unsanctioned travel outside of his district of residence, and his dishonesty about said travel to his assigned probation officer. Within weeks of his release from jail, Hernandez once again recidivated—this time committing new violations from within his home, again involving controlled substances. Perhaps most concerning, while Hernandez was awaiting sentencing on *that* set of specifications (*i.e.*, when Hernandez should have been on his best behavior and exercising impulse control, if for no other reason than to avoid a meaningful sentence from this Court), he once again recidivated, this time by assaulting an individual who slighted him. A meaningful sentence—one more serious than the previous term of 45-days jail—is necessary to deter Hernandez from recidivating again, and to drive home the message that further criminal conduct will be met with ever more serious consequences.

*Fourth*, a new term of supervised release is required to provide the defendant with the needed services to address his issues with controlled substances and impulse control. 18 U.S.C. § 3553(a)(2)(D). The instant specifications mark the second time in just over one year in which the

defendant has admitted to his possession and/or use of controlled substances. The Government respectfully submits that any new term of supervised release should include some form of treatment to address Hernandez's substance abuse issues. Similarly, any new term of supervised release should include anger management counseling. Hernandez is now six years removed from his criminal sentencing; yet he still appears unable to control his temper when slighted by a random stranger. While it is unfortunate that anyone would verbally provoke Hernandez for cooperating with the Government, it is an unfortunate reality that taunting like this is likely recur for the foreseeable future. Hernandez must learn to turn the other cheek and walk away from situations like these moving forward. This Court and Probation can play a meaningful role in Hernandez's path to rehabilitation, including by providing him with the necessary mental health and/or anger management services that will better prepare Hernandez to stand on his own two feet, and to walk away when provoked.

### IV. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a custodial sentence within the Guidelines range of 3-to-9 months' imprisonment, to be followed by a new term of at least two years' supervised release, to include treatment for both substance abuse and anger management.[1]

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: /s/
Jonathan E. Rebold
Assistant United States Attorney
(212) 637-2512

cc: Lance Lazzaro, Esq. (via ECF and email)
U.S. Probation Officers Sandra Osman and Donn Grice (via email)

---

[1] The Government is awaiting Probation's position on sentencing and will relay it to the Court once it is received.